**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | | |
|---|---|---|
| **TIMOTHY M. WALKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Cause No. 4:06-CV-120-JVB** |
| | ) | |
| **ALCOA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM, OPINION, & ORDER**

This matter is before the Court on the Motion for Summary Judgment on the Issue of

Defendant's Liability for Religious Discrimination [DE 43] and Motions to Strike [DE 57 and

61] filed by Plaintiff Timothy W. Walker.  This matter is also before the Court on the Motion for

Summary Judgment [DE 46] filed by Defendant Alcoa, Inc.  The issues have been fully briefed.

I. <u>Factual Background</u>

Timothy Walker ("Walker" or "Plaintiff") began his employment at Alcoa, Inc. ("Alcoa"

or "Defendant") on August 28, 1995.  Until approximately October 20, 2006, Walker was

employed by Alcoa and worked at Alcoa's Lafayette plant.  Walker alleges that he is a Christian

and has been the pastor of Colfax Wesleyan Church since he began working at Alcoa.  He

contends that his sincerely held religious beliefs prohibit him for working on Sundays.  Initially,

Walker did not request a religious accommodation so that he did not have to work on Sundays,

despite the fact that he was a Christian and pastor during that period.  However, in May 1998 –

nearly three years after he began his employment at Alcoa – Walker requested a religious

accommodation.  Alcoa implemented that accommodation, which remained in place until

September 2005.

Alcoa asserts that the Company underwent significant business changes in 2004-2005, causing it to meet increases in demand with increased productivity by scheduling employees to work more hours, including overtime on the weekends.  DE 48 at 3.  Alcoa also contends that, during that period, it failed to meet production goals due to chronic absenteeism, a new Company-wide safety rule limiting overtime hours, a high number of employees with medical restrictions that limited their working hours, and eleven employees who were not required to work on Sundays because of their religious beliefs, plus three others who were asking for a similar accommodation.  *Id*.  Alcoa states that it reevaluated its prior treatment of Sunday absences and determined that it could no longer provide a blanket excuse from work on Sundays. *Id*.  At that time, Alcoa removed Walker's accommodation and scheduled Walker to work on Sundays.  Walker contends that, as a result, he has been subjected to the company's progressive discipline policy for missing scheduled work on Sundays.

II.  Procedural History

Walker filed his Complaint on August 10, 2006, asserting two causes of action: (1) a violation of Title VII of the Civil Rights Act of 1964 on the grounds that Defendant failed to accommodate his religious beliefs (Count I), and (2) an intentional infliction of emotional distress claim ("IIED") on the same grounds (Count II).  On October 5, 2006, Alcoa filed a Motion to Dismiss Count II of the complaint.  Oral argument was heard before Judge Allen Sharp on December 11, 2006, and the motion to dismiss was denied.  This case was reassigned from Judge Sharp to Judge Joseph S. Van Bokkelen on October 25, 2007 [DE 51].  There was a settlement conference previously scheduled in this case, but the parties indicated to Judge Rodovich in September 2007 [DE 37] that a settlement conference would not be productive until

2

after a ruling on summary judgment issued.

III.  Jurisdiction and Venue

Walker is a citizen and resident of Tippecanoe County, Indiana, and Alcoa is a

Pennsylvania corporation doing business in the Northern District of Indiana.  The Court has

jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. §§ 2000e-(5) and

2000e-(16).  The Court also has supplemental jurisdiction over the claim for intentional infliction

of emotional distress.  Venue is proper because the alleged unlawful employment actions

occurred in Tippecanoe County.

IV.  Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

proper only if there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law.  *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986).  In deciding a motion for summary judgment, a court must

view all facts in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 255 (1986); *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572,

583 (7th Cir. 1994).  When parties file cross motions for summary judgment, each motion must

be assessed independently, and denial of one does not necessitate the grant of the other.  *M.*

*Snower & Co. v. United States*, 140 F.2d 367, 369 (7th Cir. 1944).  Rather, each motion

evidences only that the movant believes it is entitled to judgment as a matter of law on the issues

within its motion and that trial is the appropriate course of action if the court disagrees with that

assessment.  *Miller v. LeSea Broadcasting, Inc.*, 87 F.3d 224, 230 (7th Cir. 1996).

The moving party bears the burden of identifying those portions of "the pleadings,

3

depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990). *See also Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988)(stating that "a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial."). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper. In this situation, there can be "'no genuine issue of any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

V.  <u>Motion to Strike</u>

Before the Court can rule on the pending motions for summary judgment, it must address Walker's two motions to strike [DE 57 and DE 61]. Each motion to strike will be dealt with in turn.

A.  <u>Motion to Strike [DE 57]</u>

Plaintiff filed this motion to strike on November 5, 2007, seeking to strike portions of the Declarations of Bradley Blomberg, Jose Gil, Terry Jarrett, Eric Kingma, Pamela W. Leonard, David F. Musi, Daniel S. Overmyer, and Troy Tibbot, and/or exhibits thereto. Those declarations were filed by the Defendant in conjunction with its motion for summary judgment. However, Plaintiff contends that portions of those declarations fail to meet the requirements of

Fed. R. Civ. P. 56(e) in that the declarations fail to set forth facts which would be admissible in evidence.  Specifically, Plaintiff contends that those declarations and exhibits contain redacted and incorrect information, were prepared for litigation, were not produced or made available to plaintiff, fail to provide enough information about the underlying documents to create evidentiary summaries under Federal Rule of Evidence 1006, and constitute inadmissible hearsay under Federal Rule of Evidence 801 and Federal Rule of Evidence 802.  Plaintiff also contends that the declarations do not satisfy the requirements of the business records exception under Federal Rule of Evidence 803(6).

Defendant contends that, with the exception of two harmless omissions, those declarations and exhibits are proper, admissible, and should not be stricken.  Defendant asserts that redactions of irrelevant information on confidential documents does not render them inadmissible.  Defendant stated that any exhibit at issue that was prepared for litigation was a computer printout of data that had been extracted from computerized databases maintained in the regular course of business and is, therefore, admissible under Federal Rule of Evidence 803(6).  Defendant stated that every document supporting the exhibits was produced or made available for plaintiff to inspect, and the declarations provided more than enough information for plaintiff to confirm the accuracy of any evidentiary summaries.  Finally, Defendant asserts that employee complaints overheard by various Alcoa supervisors regarding Sunday absences do not constitute inadmissible hearsay because they were not offered to prove the truth of the complaints, but only that they were made; moreover, Defendant asserts that in any event, those statements fall under

5

one or more hearsay exceptions.[1]

### 1. *Declaration of Jose Gil*

Plaintiff contends that "Exhibit 1 to the Declaration of Jose Gil is a summary of eighty-four pages of data. Most of the information contained on the eight-four pages of data is redacted." DE 57 at 2. Plaintiff contends that the Exhibit 1, the Gil summary, and paragraphs 9-19 of the Gil Declaration should be stricken as inadmissible because (1) it is not a business record under Federal Rule of Evidence 803(6) and (2) because the summary cannot be duplicated based on the information provided in the eighty-four pages of data and, therefore, indicates a lack of trustworthiness. DE 58 at 4.

The Court finds that Exhibit 1 to the Gil Declaration, and the Gil Declaration itself, are admissible. Simply because the document is redacted does not mean that it is inadmissible. In this case, Alcoa has explained the summary contained in the Gil Declaration exhibit and has demonstrated that it is an accurate summary of the underlying data. Plaintiff's motion to strike as it relates to these documents is denied.

### 2. *Declaration of Pamela Leonard*

Plaintiff contends that Exhibits 2, 4, and 5 to the Declaration of Pamela Leonard and all statements in the Leonard Declaration related to Exhibits 2, 4, and 5 are inadmissible and should be stricken because (1) they are summaries of unidentified documents and, as such, Plaintiff cannot determine if the documents qualify as business records under Federal Rule of Evidence 803(6) and (2) no adequate foundation has been laid for the underlying documents or for Exhibits

---

[1]In both of its responses to Plaintiff's motions to strike, Defendant seeks an award of its costs incurred in responding to Plaintiff's motions to strike. Those requests are denied.

2, 4, and 5 as summaries under Federal Rule of Evidence 1006.  DE 58 at 5.  Plaintiff asserts that

Exhibits 2, 4, and 5 to the Leonard Declaration do not meet the requirements of Federal Rule of

Evidence 1006 because the underlying documents are not identified, they do not indicate that the

underlying documents were produced to Walker, and because no Bates numbered documents

identified as the underlying documents have been produced.  *Id*.

Plaintiff further contends that Exhibits 3, 6, 7, and 8 to the Leonard Declaration and

paragraphs 28-29, 32-34, 51-73, and 86-91 of the Leonard Declaration are inadmissible and

should be stricken; Plaintiff contends that those documents are summaries of the data contained

in reports which were created at Leonard's direction and under her supervision for the law suit

and, as such, are not business records under Federal Rule of Evidence 803(6).  *Id.* at 5-6.

Plaintiff further asserts that Exhibits 3, 6, 7, and 8 to the Leonard Declaration do not meet the

requirements of Federal Rule of Evidence 1006 because no adequate foundation has been laid for

the underlying documents or for Exhibits 3, 6, 7, and 8 as summaries under Federal Rule of

Evidence 1006 and because no Bates numbered documents identified as the underlying

documents have been produced.  *Id*. at 6.

After considering all the documents before the Court, the Court finds that Exhibits 2, 4,

and 5 to the Leonard Declaration, and all related statements in the Leonard Declaration itself, are

admissible because they were properly identified and produced to Walker.  The Seventh Circuit

has noted that "motions to strike words, sentences, or sections out of briefs serve no purpose

except to aggravate the opponent – and though that may have been the goal here, this goal is not

one the judicial system will help any litigant achieve."  *Redwood v. Dobson*, 476 F.3d 462, 471

(7th Cir. 2007).  Moreover, the Court finds that Exhibits 3, 6, 7, and 8 to the Leonard Declaration

7

– and all related statements contained in the Leonard Declaration – are admissible.  The Court finds that these exhibits are evidentiary summaries under Federal Rule of Evidence 1006, of which the underlying data was produced and identified; these documents summarize the data contained in computer printouts of much larger reports that were created during the ordinary course of business even though the report was compiled for use in this litigation.  *See United States v. Hernandez*, 913 F.2d 1506, 15112-13 (10th Cir. 1990); *Health Alliance Network, Inc. v. Cont'l Cas. Co.*, 245 F.R.D. 121, 129 (S.D.N.Y. 2007).

   3.  *Declaration of David F. Musi*

   Plaintiff contends that Exhibit 2 to the Declaration of David F. Musi – a summary of data contained in the medical restrictions database – and paragraphs 11-15 of the Musi Declaration should be stricken on the basis that Exhibit 2 it is not a business record under Federal Rule of Evidence 803(6).  Plaintiff contends that Exhibit 2 fails to contain a description of exactly what data contained in the medical restrictions database was summarized and because there is not indication that the data summarized was made available to Plaintiff.  DE 57 at 3.

   A review of the Musi Declaration, however, reveals that Mr. Musi clearly identified the data contained in the medical restrictions database that was summarized.  Specifically, Mr. Musi states that "he is responsible for maintaining data contained in a spreadsheet regarding medical restrictions for certain employees.  The data in the spreadsheet usually is generated from information provided by a physician or health care provider."  Musi Decl. ¶ 10.  Mr. Musi further states that Exhibit 2 "is a summary of the data contained in the medical restrictions database, which has been filtered to include information applicable only to employees working in the Extrusion Department during calendar years 2005 and 2006 under medical restrictions

8

prohibiting them from working more than 40 hours or 48 hours in a given work week." Musi Decl. ¶ 11. Further, the record reveals that the evidence summarized was made available to Plaintiff. Thus, paragraphs 11-15 of and Exhibit 2 to the Musi Declaration are admissible, and Plaintiff's motion is denied.

Plaintiff also contends that paragraph 17 of the Musi Declaration is inadmissible as hearsay under Federal Rules of Evidence 801 and 802 because it attributes statements of unidentified third parties, offered for the truth of the matter asserted. DE 57 at 3. The Court finds, however, that Musi's testimony regarding the employee complaints he overheard about Sunday absences is not hearsay under Federal Rules of Evidence 801 and 802 because it is not offered for the truth of the matter asserted; instead, Musi's testimony is offered to show the effect of those statements on the hearer, which in this case is the employer. Accordingly, Musi's testimony is admissible, and Plaintiff's motion to strike is denied.

4. *Declaration of Troy Tibbot*

Plaintiff seeks to have Exhibit 1 to and paragraphs 11-18 of the Tibbot Declaration stricken because, as a summary of attendance data within the Pack/Ship department at Alcoa from August 29, 2005 through September 25, 2005, it does not qualify as a business record under Federal Rule of Evidence 803(6). DE 57 at 4. Plaintiff asserts that this summary does not indicate what data was summarized or that such data was made available to Plaintiff for review; accordingly, Plaintiff contends that it is impossible to determine if Exhibit 1 is a correct analysis of the underlying data. DE 58 at 7.

Because Exhibit 1 to the Tibbot Declaration is not an evidentiary summary, Alcoa was not required, under Federal Rule of Evidence 1006, to provide a description of the data

9

summarized.  It is not clear from the filings that this document was created solely in preparation

for litigation instead of in the regular course of business as a business record.  Accordingly, in an

abundance of caution, the Court declines to strike this exhibit.  *See Williams v. Jader Fuel*

*Co.,* 944 F.2d 1388, 1405-06 (7th Cir. 1991) (stating that motions to strike are generally

disfavored).

     5.  *Declaration of Bradley Blomberg*

     According to Plaintiff, Exhibit 1 to the Blomberg Declaration and paragraphs 4-12 of

his declaration which rely on Exhibit 1 should be stricken because Exhibit 1 is a summary of a

report created in preparation for this lawsuit and is not a business record under Federal Rule of

Evidence 803(6).  DE 57 at 4.  Plaintiff contends that the data comprising the report and/or

Exhibit 1 lack foundation as a summary under Federal Rule of Evidence 1006.  The Court

disagrees.  Paragraphs 4-9 of the Blomberg Declaration adequately describe the source of the

data in Exhibit 1.  Moreover, as noted above, Exhibit 1 is not inadmissible as a business record

on the basis that it is a computer printout generated in anticipation of litigation; Defendant has

clearly established that the data contained in the printout is maintained in a computer database in

the ordinary course of business.  Accordingly, Plaintiff's motion to strike paragraphs 4-12 of and

Exhibit 1 to the Blomberg Declaration is denied.

     Plaintiff also contends that paragraphs 15-17 of the Blomberg Declaration are

inadmissible because, according to the Plaintiff, those paragraphs contradict Blomberg's

deposition testimony.  DE 57 at 4.  Specifically, Plaintiff asserts that, at his deposition, Blomberg

testified that no affidavit or statement by Blomberg had been requested by or provided to Alcoa.

DE 58 at 8 (citing Blomberg Dep. 20:2-12).   Plaintiff also asserts that Blomberg testified at his

deposition that he had not been asked and had not prepared any type of report for Alcoa to assist

Alcoa with Walker's case.  *Id*. (citing Blomberg Dep. 64:21-66:7).  Plaintiff goes on to assert that

there exists no privilege for statements by Blomberg and that Blomberg provided a sworn

declaration in support of Alcoa's motion for summary judgment.  Plaintiff contends that this

declaration contradicts Blomberg's deposition testimony insofar as, in the declaration, Blomberg

"describes the negative effect on production of a Sunday absence by a worker in the same

classification as Walker," and at his deposition Blomberg stated that "Alcoa management had

never identified specific employees who were an attendance problem," and [Blomberg] "denied

ever hearing that employees with a religious accommodation were a problem with respect to

production delays."  DE 58 at 9 (citing Blomberg Decl. ¶¶15-17; Blomberg Dep. 59:20-60:2).

Plaintiff asserts that because there is "no plausible explanation for the discrepancy," those

portions of the Blomberg Declaration should be stricken.  DE 58 at 9.

      When a "'deposition and affidavit [or, in this case, a declaration] are in conflict, the

affidavit is to be disregarded unless it is demonstrable that the statement in the deposition is

mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of

memory is in the circumstances a plausible explanation for the discrepancy.'"  *Amadio v. Ford

Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001) (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64,

67-68 (7th Cir. 1995)).  The Court agrees with the Plaintiff that there are unexplained

discrepancies between Blomberg's declaration and deposition testimony.  Accordingly,

Plaintiff's motion to strike paragraphs 15-17 of the Blomberg Declaration is granted.

      6.  *Declaration of Terry Jarrett*

      Plaintiff seeks to strike Exhibit 1 to the Jarrett Declaration – a spreadsheet containing

data regarding the number of pound of aluminum product produced by the Extrusion Department

for January 1 though May 31, 2007 – because it was prepared for this litigation and is

inadmissible as a computer business record under Federal Rule of Evidence 803(6).

Exhibit 1 is allegedly "identical to the 'Actual Pounds per Hour Report' (Bates number D

3543-3546)" produced to the Plaintiff except for minor formatting and rounding.  DE 58 at 9-10

(citations omitted).  Plaintiff stated that these documents – D 3543-3546 – were the partial

subject of a motion for sanctions [DE 38] filed by Plaintiff.  Without wading further into this

issue, the Court notes that on December 28, 2007, Magistrate Judge Rodovich issued an Order

[DE 76] denying that motion for sanctions.  Additionally, as discussed above, the mere fact that a

computer printout was generated in the course of litigation does not mean that it is inadamissible;

if the underlying data in the printout was maintained in the ordinary course of business – as it

was in this instance – the document is admissible.  Walker has not established any indicia of

untrustworthiness.  Accordingly, Plaintiff's motion to strike Exhibit 1 to the Jarret Declaration is

denied.

7. *Declarations of Daniel S. Overmyer and Eric Kingma*

Plaintiff asserts that the Overmyer Declaration (¶ 10) and Kingma Declaration (¶ 5)

contain inadmissible hearsay under Federal Rules of Evidence 801 and 802 and, therefore, should

be stricken.  DE 57 at 7; DE 58 at 11.  Specifically, Plaintiff asserts that the identified paragraphs

of the Overmyer and Kingma Declarations attribute to unidentified third parties statements,

offered for the truth of the matter stated, regarding Plaintiff's accommodation and which are

disparaging to Walker.  *Id.*

Statements that certain unidentified employees complained about Walker's Sunday

12

absences does not constitute hearsay under Federal Rules of Evidence 801 and 802 because those statements are not offered to show that the unidentified employees who made the statements were dissatisfied that Walker was allowed to miss work on Sundays; instead, those statements are offered to show the effect of the statements on the hearer.  Because those statements are admissible, Plaintiff's motion to strike paragraph 10 of the Overmyer Declaration and paragraph 5 of the Kingma Declaration is denied.

      B.  <u>Motion to Strike [DE 61]</u>

On November 21, 2007, Plaintiff filed an additional motion to strike, seeking to strike portions of the Supplemental Declarations of Pamela W. Leonard, including Exhibit 1 thereto, and a portion of the Declaration of Debby Spidel.  Plaintiff asserts that portions of Leonard's supplemental declaration fail to set forth facts as would be admissible in evidence under Federal Rule of Civil Procedure 56(e).  Plaintiff contends that Exhibit 1 to Leonard's supplemental declaration is a summary of unidentified documents and that it is impossible to determine if the documents qualify as business records under Federal Rule of Evidence 803(6) or whether it is an accurate summary of the date derived from unspecified documents.  Plaintiff contends that no foundation has been laid for the underlying documents or Exhibit 1 to Leonard's supplemental declaration as a summary under Federal Rule of Evidence 1006 and, therefore, Exhibit 1 is inadmissible.  Plaintiff further contends that paragraphs 8-10 of Leonard's supplemental declaration refer to Exhibit 1 and, accordingly are inadmissible.  Finally, Plaintiff asserts that Paragraph 5 of Spidel's declaration contradicts her clear deposition testimony and is therefore inadmissible.

Defendant asserts that the declarations and exhibits are proper and admissible.  Defendant

13

states that its counsel clearly marked and produced to Plaintiff every document supporting

Exhibit 1 to Leonard's supplemental declaration and that Leonard's supplemental declaration and

the documents themselves provided more than enough information to confirm the accuracy of the

summary.  Defendant also asserts that Spidel's declaration in no way contradicts her deposition

testimony.  Defendant asserts that the statement in Spidel's deposition clearly referred to a period

before any decision had been made and was in response to a question posed by Plaintiff's counsel

that was vague, confusing, misleading, and compound.  Thus, Defendant asserts that there is no

inconsistency with her declaration and no basis for excluding her clarifying statement.

　　　　The Court finds that the Spidel Declaration, Leonard Supplemental Declaration, and

Exhibit 1 to the Leonard Supplemental Declaration are proper and admissible.  The underlying

data used in Exhibit 1 to the Leonard Supplemental Declaration was clearly marked and

produced to Walker.  Further, Exhibit 1 to the Leonard Supplemental Declaration clearly

indicated that it contained a summary of data contained in Weekend Overtime Sheets for Mr.

Walker's job classification and shift in the Extrusion Department for 2005 and 2006; those

worksheets were disclosed to Plaintiff.

　　　　Moreover, unlike the Blomberg declaration and deposition, where the Court found that

there existed unexplained discrepancies, there is no contradiction or discrepancy between

Spidel's declaration and deposition testimony.  At her deposition, Spidel testified as follows:

> Q.     As far as the concept of undue hardship, at the point that you were evaluating this,
> roughly the July 14, 2005 date, had you heard it stated by anybody on behalf of the
> company that the accommodations being offered allowing people to have full
> Sundays off was definitely an undue hardship, or did they think that it might be?
>
> MR. ARBERY:        Object to the form

> A.  When I had these meetings, there was – a definite decision had not been reached because we wanted to find out more about the accommodations.  So at that point, I don't believe that a definite decision had been made.

Doc. 47-28 at 29:22-30:9.  In her subsequent declaration, Spidel stated that the "decision" she mentioned was not a determination of undue hardship by Alcoa, but rather the decision in September 2005 to no longer provide a blanket excuse for all Sundays off from work.  Spidel Decl. ¶ 5.  Generally, when a deposition and affidavit or declaration are in conflict, the declaration is to be disregarded "unless it is demonstrable that the statement in the deposition is mistaken, perhaps because the question was phrased in a confusing manner . . . ."  *Amadio*, 238 F.3d at 926 (citations and quotation marks omitted).  It is clear from the above-quoted deposition testimony that the question at issue was phrased in a confusing manner; this is indicated by defense counsel's objection.  Further, any "contradiction" has been explained.  Ms. Spidel has explained that, at the deposition, she was not evaluating the concept of undue hardship because, as she had previously indicated, she had not been involved in specific discussions regarding the legal concept of undue hardship.  The record is likewise clear that Ms. Spidel did not testify as to the determination of whether a particular accommodation constituted an undue hardship, but testified generally as to what accommodations, in general, had been requested an why.  Because there exists no conflict between Ms. Spidel's declaration and her deposition testimony, Ms. Spidel's declaration, in its entirety, is admissible.  As such, Plaintiff's motion to strike is denied.

VI.  Discussion

On October 1, 2007, Walker filed a Motion for Summary Judgment [DE 43], asserting that there are no genuine issues as to any material fact regarding Alcoa's liability for failing to accommodate his sincerely held religious belief in the absence of undue hardship.  Walker also

asserts he is entitled to summary judgment on his claim of religious discrimination under Title VII.  In response, Alcoa asserts that it has established, through ample evidence, that it provided one or more reasonable accommodations to Walker.  Alcoa also asserts that guaranteeing Walker every Sunday off for as long as he worked at Alcoa would create an undue hardship for the Company.

_____Alcoa filed a cross motion for summary judgment [DE 46] on October 1, 2007, asserting that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  Alcoa asserts that it offered Plaintiff no fewer than eight reasonable accommodations that would have fairly resolved the conflict between Plaintiff's purported religious beliefs and his work schedule.  Alcoa contends that Walker rejected or underutilized each accommodation, holding out only for his preferred accommodation – a permanent guarantee of every Sunday off. Alcoa asserts that Plaintiff's preferred accommodation would cause an undue hardship for the Company because – among other things – it would have resulted in more than *de minimis* loss of productivity and increase in payroll and other costs, violation of the collective bargaining agreement ("CBA") governing plaintiff's employment, numerous accommodation requests from other employees, and dissension and loss of morale among plaintiff's coworkers.

Alcoa also asserts that Walker's claim for IIED fails as a matter of law.  Specifically, Alcoa contends that Walker admitted that no one at Alcoa ever mistreated, abused, or addressed him in a derogatory manner.  Rather, according to Alcoa, Walker identified only one conversation that upset him, in which a supervisor allegedly told him that he had to "make a choice" whether to work as scheduled or stay out of work on Sunday.

Walker contends that Alcoa's motion should be denied because there are genuine issues

of material fact on Walker's claim of religious discrimination and his supplemental claim of

Intentional Infliction of Emotional Distress ("IIED").  It is worth noting that Walker stated in a

footnote in his reply brief that he believes he is entitled to summary judgment on the issue of

Alcoa's liability for religious discrimination, but in the alternative submits that there are genuine

issues of material fact precluding summary judgment for Alcoa on all issues.

    A.  Failure to Accommodate

    An employer is prohibited under Title VII from firing an employee solely on the basis of

his religion, unless the employer can show that "he is unable to reasonably accommodate an

employee's . . . religious observation or practice without undue hardship on the conduct of the

employer's business."  42 U.S.C. § 2000e(j).  To establish a *prima facie* case of religious

discrimination by failure to accommodate,  a plaintiff must show that: (1) he follows a bona fide

religious practice or observance that conflicts with an employment requirement; (2) he called the

religious practice or observance to the employer's attention; and (3) the religious practice or

observance was the basis for an adverse employment action.  *EEOC v. Ilona of Hungary, Inc.*,

108 F.3d 1569, 1575 (7th Cir. 1997).  Once a plaintiff presents a *prima facie* case, the burden

shifts to the defendant to present evidence proving either that it offered a reasonable

accommodation to the employee which the employee did not accept, or that accommodation of a

religious practice or observance would create an undue burden on the employer.  *Wilburn v.*

*Y.M.C.A. of Greater Indianapolis (Ransburg Branch)*, 2007 WL 2752391, *6 (S.D. Ind.

September 18, 2007), citing *EEOC v. United Parcel Service*, 94 F.3d 313, 317-18 (7th Cir. 1996).

*See Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 934-35 (7th Cir. 2003) ("Title VII

requires an employer to try to accommodate the religious needs of its employees, that is, to try to

adjust the requirements of the job so that the employee can remain employed without giving up the practice of his religion, provided the adjustment would not work an undue hardship on the employer.").  The burden of proof on these issues rests with the employer.  *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (1978).

     *1.  Whether Alcoa offered Walker a Reasonable Accommodation*

     There is no dispute that plaintiff's practice (refusal to work on Sunday – his Sabbath) is religious and that missing work due to that practice was the reason for his discharge.  There is also no question as to whether plaintiff called his practice to the defendant's attention.  At the time Walker began his employment at Alcoa in 1995, he was a licensed minister, and he informed Alcoa of his desire not to work on Sundays.  Walker became head pastor of Colfax Wesleyan Church in August of 1998.  Beginning in 1998, Walker received a formal religious accommodation from Mike Fultz and Andrew Patton (Patton Aff. ¶¶ 4-9).  Walker's accommodation consisted of full Sunday absences, and Walker was not disciplined for not working a scheduled Sunday shift from 1998 until September of 2005,[2] when Alcoa removed the full day Sunday religious accommodation (Patton Aff. ¶¶ 4-9).  Walker then accrued absences under Alcoa's attendance policy for missing assigned Sunday shifts; he was disciplined under Alcoa's progressive disciplinary policy, which ultimately culminated in his termination on or about October 20, 2006 (Leonard Dep. p. 137, ll. 3-6, p. 144, ll. 14-18, p. 150-151; Spidel Dep. p. 71, ll. 11-25).  Because Walker's refusal to work on Sunday is a religious practice that he called to Alcoa's attention and because this religious practice was the basis for an adverse

---

[2]The record also indicates that Walker was not disciplined for missing a scheduled Sunday shift even before receiving the formal accommodation in 1998.

employment action, the Court finds that plaintiff has established a *prima facie* case of religious discrimination.

The main issue in this case, then, is whether the defendant has met its burden of establishing that either it reasonably accommodated plaintiff or that it could not accommodate plaintiff's religious practices without undue hardship to Alcoa's business. *Baz v. Walters*, 782 F.2d 701, 706 (7th Cir. 1986). *See Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir. 1993) (stating that an employer need not address alternative measures suggested by the employee if it has already offered a reasonable accommodation); *Rodriguez v. City of Chicago*, 156 F.3d 771, 775 (7th Cir. 1998) (stating that employers are required to "reasonably accommodate an employee's religious observance or practice unless [the employer] can demonstrate that such an accommodation would result in an undue hardship to the employer's business.").

Title VII requires an employer to provide one reasonable option that will eliminate the conflict between the employee's job and religious beliefs. *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 70 (1986). And a "reasonable accommodation" of an employee's religious beliefs is not one which is supposed to satisfy the employee's "every desire." *Wright*, 2 F.3d at 217. Rather, the accommodation need only eliminate "the conflict between employment requirements and religious practices." *Id*. In determining whether a proposed accommodation is reasonable, the Court must look at the "context of the unique facts and circumstances of the case." *Rodriguez*, 156 F.3d at 776 n. 7.

Here, Alcoa asserts that it offered Walker at least eight accommodations that, alone, or in combination, would have eliminated the conflict between Walker's desire not to work on Sundays due to his religious beliefs and Alcoa's legitimate scheduling needs. However, Alcoa

offered Walker no reasonable accommodation as an alternative to full day Sunday absences. Rather, the accommodations offered by Alcoa failed to remove Walker's religious conflict.

One accommodation offered to Plaintiff was that he could use three weeks (fifteen work days) of his vacation one day at a time ("VODAT") to cover his Sunday absences.  Plaintiff rejected this offer, stating that he would have had to "pay" to have Sundays off and because he would not have been guaranteed Sundays off if he exhausted his vacation. Courts have held that an "employer who permits an employee to avoid mandatory Sabbath work only by using accrued vacation does not 'reasonably accommodate' the employee's religious beliefs." *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1379 (6th Cir. 1994).  *See United States v. Albuquerque*, 545 F.2d 110, 113-14 (10th Cir. 1976).  Thus, the Court finds that the VODAT offer is not a reasonable accommodation.  Alcoa's offer of a self-swap to be used after exhausting his VODAT, wherein the Plaintiff could exchange his Sunday shift for and make up his Sunday work on another day in the week when he was not scheduled, is likewise not a reasonable accommodation because, inherently, it requires that Walker first exhaust his vacation time before being able to utilize the self-swap option.

Alcoa also offered to allow Walker to bid on a transfer to another department with less or no Sunday work at a comparable pay grade.  Alcoa contends that, based on Walker's seniority, he could have transferred into one of at least twenty-eight positions in four different departments. *See* Defendant's Statement of Material Facts 55-83.  Alcoa stated, "[b]ased on production levels and business conditions in the Tool and Die and Ultrasonic Departments, Alcoa would have excused Plaintiff from working on Sundays entirely, as long as he made up his Sunday work on one or more shifts during the same week."  DE 48 at 8.  Alcoa stated that in other departments,

20

such as the Tube Mill Department,[3] "Plaintiff would not have been scheduled for Sunday work on more than ten Sundays in 2006, or on more than 27 Sundays in the Ingot Department.  Alcoa would have permitted Plaintiff to use a combination of vacation days and the three "Free Absences" employees receive each quarter under the Attendance Policy to cover these forced overtime events."  *Id*.

In *Rodriguez*, 156 F.3d at 776, the court stated that a shift change or job transfer *may* constitute a reasonable accommodation "particularly when such changes do not reduce pay or cause loss of benefits." (emphasis added).   In this case, however, the offer of transfer to a different department with *less* or no Sunday work is not a reasonable accommodation because it does not remove entirely the possibility that Walker would have to work on Sunday.  The same analysis applies to Alcoa's offer that Walker could trade shifts with employees who were scheduled off on Sunday but working other days during the week when Plaintiff was not scheduled for work.  In theory, this offer of accommodation appears reasonable, but it is not in reality due to the fact there still exists the potential that, if Walker is unable to find a swap, he would be required to either use vacation time to cover the absence or work on a Sunday.

Finally, Alcoa offered that Walker could work a double shift on Saturday instead of Sunday or that he could report to work at different times than his regularly scheduled shift and work on a different shift on Sundays, thus allowing Walker to attend Sunday church services.  The proposed accommodation of working a double shift is not a reasonable accommodation

---

[3]Separate from its offer to allow Walker to transfer through the bid system, Alcoa offered Walker, through his collective bargaining representative, to transfer to the Tube Mill Department. The Union rejected the offer and refused to enter into an extracontractual agreement to permit the accommodation.

because it would violate the terms of the CBA.  Allowing Walker to work a later Sunday shift –
as opposed to a Sunday morning shift – is likewise not a reasonable accommodation because it
does not remove the requirement that Walker work on Sunday, which conflicts with Walker's
sincerely held religious beliefs.

Based on the foregoing, the Court finds that Alcoa failed to comply with the requirement
in Title VII that it attempt to accommodate the religious observances of Walker.  Though Alcoa
offered several accommodations to Walker, Alcoa did not provide a *reasonable* accommodation
for Walker's desire to not work on Sundays.  Accordingly, the Court must determine whether the
accommodation preferred by Walker would have imposed an undue hardship on Alcoa.

*2.  Whether Walker's Preferred Accommodation Creates an Undue Burden on Alcoa*

If an employer fails to demonstrate that it has reasonably accommodated its employee's
religious beliefs, the employer must show that the proposed accommodation would create an
undue burden on the employer.  If an employer "cannot accommodate an employee's religious
needs without suffering undue hardship," the employer is not liable under Title VII.  *U.S.
E.E.O.C. v. Bridgestone/Firestone, Inc.*, 95 F. Supp. 2d 913, 921 (C.D. Ill. 2000).  "Undue
hardship" has been defined as having to bear more than a *de minimis* cost in order to
accommodate the religious preference of an employee.  *Trans World Airlines, Inc. v. Hardison*,
432 U.S. 63, 84 (1977).

Alcoa contends that Walker's preferred accommodation – a permanent guarantee of every
Sunday off – would constitute an undue hardship for the Company.  DE 48 at 15.  Specifically,
Alcoa asserts that "[s]uch an accommodation would have breached the collective bargaining
agreement, treated other employees unfairly, diminished overall morale, resulted in loss of

22

productivity and increased wages, and created a tidal wave of similar requests."  DE 48 at 16.

Walker asserts that Alcoa "cannot show, *post hoc*, that its full day accommodation in 2005

created an undue hardship based on evidence marshaled in 2007" and that it "cannot show undue

hardship in accommodating Walker now."  DE 55 at 17-18.  Walker contends: (1) Alcoa

experienced higher business volume during 1998-99 than during 2005-06, without removing full

day Sunday accommodations, (2) there are more absences on Saturdays than Sundays, (3) Alcoa

did not replace Walker with other workers when he was scheduled to work on a Sunday and did

not due to his accommodation; and (4) there would be no additional cost to Alcoa for

replacement workers because those replacement workers would receive the same pay or less than

the employees being replaced.  DE 55 at 18.

　　　　Walker also raised issues regarding Alcoa employees Jerry Smelser and James Vawter.

Smelser began working at Alcoa's Lafayette location in August of 1977.  Smelser Aff. ¶4.  Like

Walker, Smelser informed Alcoa of his sincere religious belief against working on Sundays.

Smelser Aff. ¶5.  In 1992, Alcoa required Smelser to work on Sundays, which prompted Smelser

to file a charge of discrimination with the EEOC.  He filed suit in 1993, and in 1994, Smelser

and Alcoa settled the lawsuit.  As a term of the settlement, Alcoa agreed to provide Smelser with

the following accommodation: Smelser must make a good faith effort to find a replacement for

scheduled Sundays, and in the event that he cannot find such a replacement, Alcoa allows him

not to work on Sundays, and does not discipline him for the same.  Smelser Aff. ¶¶ 13-14.

Walker contends, "[i]f Alcoa would have violated the CBA by continuing to provide Walker

with a full day Sunday accommodation, it has been and is in violation of the CBA with respect to

employee Jerry Smelser.  Jerry Smelser has been provided the same religious accommodation

provided Walker, except that Smelser's accommodation began in 1994.  Alcoa did not remove

Smelser's accommodation during 2005, and continues to provide Smelser with the full day

Sunday accommodation." DE 55 at 18.  Alcoa does not concede that Smelser's accommodation

is not an undue hardship on the company.  Rather, Alcoa states that Smelser's accommodation is

provided in compliance with the terms of a written settlement agreement executed over twelve

years ago.  DE 52 at 8.

James Vawter is another Alcoa employee who works with Smelser in the Tube Mill at

Alcoa's Lafayette plant and who also holds a sincere religious belief against working on

Sundays.  Vawter Aff. ¶¶ 3-5, 7-10, 22.  In 2005, Vawter requested an accommodation similar to

Smelser's accommodation, but his request was denied.  Vawter filed a charge of discrimination

with the EEOC, and the EEOC determined that providing a full-day Sunday accommodation

would not be an undue hardship for Alcoa.  Vawter Aff. ¶ 30, 34.  On October 12, 2006, the

EEOC issued a formal "cause" determination in Vawter's case; Vawter's failure to accommodate

lawsuit is currently pending before this Court.  Alcoa asserts that the EEOC cause determination

in Vawter's case is immaterial because Vawter worked in a different department than Walker,

with different demands and challenges.  DE 52 at 9.

The record clearly indicates that there are questions of fact in this case as to whether

providing Walker with the permanent guarantee of Sundays off would create an undue burden on

Alcoa.  With regard to Smelser and Vawter, the Court is not inclined to decide *this* case based on

the differing facts in other cases.  Rather, the Court mentions Smelser and Vawter only to further

illustrate the fact that questions of fact exist as to whether Walker's proposed accommodation

created an undue burden on Alcoa.  Because questions of fact exist, the Court must deny both

24

parties' motions for summary judgement on the issue of accommodation.

       B.  <u>Intentional Infliction of Emotional Distress</u>

       Defendant also seeks summary judgment on Walker's state law claim for emotional

distress.  Intentional infliction of emotional distress is committed by "'one who by extreme and

outrageous conduct intentionally or recklessly causes severe emotional distress to another . . . .'"

*Imhoff v. Kmart Stores of Indiana, Inc.*, 149 F.Supp.2d 559, 572 (N.D. Ind. 2001) (quoting

*Ledbetter v. Ross*, 715 N.E.2d 120 (Ind. Ct. App. 2000)).  The Court in *Imhoff* stated, "[i]t is the

intent to harm one emotionally that constitutes the basis for the tort of an intentional infliction of

emotional distress.  However, the requirement to prove this tort are 'rigorous.'" *Imhoff*, 149

F.Supp.2d at 572 (citations omitted).  In *Inlow v. Wilkerson*, the Court stated, "[l]iability has only

been found where the conduct has been so outrageous in character, and so extreme in degree, as

to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community."  774 N.E.2d 51, 55 (Ind. Ct. App. 2002) (internal

quotations omitted).  And the Seventh Circuit has stated, "Indiana courts have been reluctant to

award damages for intentional infliction of emotional distress in employment cases."  *McCreary*

*v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1167 (7th Cir. 1998).

       Walker bases his claim for intentional infliction of emotional distress on Alcoa's removal

of a religious accommodation consisting of not working on Sundays that existed from 1998 until

2005.  DE 55 at 23 (citing Complaint ¶¶ 15-18, 23; Patton Aff. ¶¶ 4-9).  Walker also asserts that

his supervisor, Dave Musi, told him that he had to choose between his job and his religious

convictions.  DE 55 at 22 (citing Walker Dep. 93:21-94:22).  Finally, Walker states that his

emotion distress was caused by an article in the Lafayette Journal Courier in which Alcoa's

Human Resources Manager, Pam Leonard, stated that no one was terminated for missing Sundays. DE 55 at 23 (citing Leonard Dep. 157:9-24). Walker contends that Leonard was referring to Walker, that reading the article was very painful, and that Alcoa was "making an example of him to assist in keeping other employees under control." DE 55 at 24 (citing Walker Dep. 260:21-261:4). Walker asserts that he had no problems mentally or emotionally prior to Alcoa removing his religious accommodation and that Alcoa's actions caused him to suffer emotionally. DE 55 at 24.

Terminating an employee is not an act that would make an average member of the community exclaim "Outrageous!" *See Holbrook v. Lobdell-Emery Mfg. Co.*, 219 F.3d 598, 602 (7th Cir. 2000) (stating that the "refusal of overtime and the denial of a position change" did not meet the IIED standard). This same standard applies to the article in the Journal Courier, especially in light of the fact that Walker was not identified in the article. Walker has failed to allege facts sufficient to support a claim that Defendant's conduct was severe and outrageous, or that it intended to harm him emotionally. Moreover, the conduct that Walker alleges does not itself amount to conduct that would cause severe emotional distress to a person of ordinary sensibilities; the employer-employee relationship does not transform insults, indignities, annoyances or trivialities to extreme and outrageous conduct. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997). Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

VII.  Conclusion

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Strike [DE 57]; this motion is granted insofar as it seeks to exclude

paragraphs 15-17 of the Blomberg Declaration, but is denied in all other aspects. Plaintiff's

Motion to Strike [DE 61] is **DENIED** in its entirety. Finally, Defendant's motion for summary

judgment [DE 46] is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Motion for

Summary Judgment [DE 43] is **DENIED**.


        **SO ORDERED on June 9, 2008.**


                                                 s/ Joseph S. Van Bokkelen
_____**JOSEPH S. VAN BOKKELEN**
                                                **UNITED STATES DISTRICT JUDGE**

27